JOHN S. SCHMITTDIEL, TRUSTEE, v. JOSEPH B. MOORE,
TRUSTEE, JOHN HURLEY, JOHN H. WALSH, THE
PENINSULAR SAVINGS BANK, AND JOSEPH
B. MOORE.

*Chattel mortgage—Subrogation— Tender—Assignment—Insecurity
clause—Sale.*

1. A tender by a second mortgagee of the amount secured by the
prior mortgage, if accompanied by a demand for an assign-
ment not only of the mortgage, but of certain notes of the
mortgagor upon which the owner of the first mortgage is
indorser, and to which the second mortgagee has no right,
will not discharge the lien of the first mortgage.
2. Where the refusal to give a request to charge is justified, but
the court, in connection with such refusal, instructs the jury
that a certain fact exists which is not shown by the evidence,
and error is assigned only upon the refusal to give the request,
the erroneous instruction, though prejudicial, does not afford
a basis for relief.
3. A chattel mortgage is a chose in action, and the proper sub-
ject of assignment; and the assignee has the right to direct a
sale of the property pursuant to notice of foreclosure given by
the assignor prior to the assignment.
4. A clause in a chattel mortgage, which contains the usual power
of sale, authorizing the mortgagee, at any time when he shall
think himself insecured, to take possession of the mortgaged
property, and *then* to dispose of the same in the manner
specified in the mortgage, or in such other manner as he thinks
best, gives the right, in case of a seizure thereunder, to sell
*at once,* and before the maturity of the mortgage debt.[1]

Error to Wayne. (Brevoort, J.) Argued June 22, 1894.
Decided September 25, 1894.

Trover. All the defendants except the Peninsular Sav-

---

[1] For note on the effect of "danger," "safety," or "insecurity"
clause in a chattel mortgage, see *Robison v. Gray*, 23 L. R. A. 780.

ings Bank bring error.     Reversed.     The facts are stated in the opinion.

*W. F. Atkinson,* for appellants Hurley and Walsh.

*Michael Brennan,* for appellant Moore.

*Edwin F. Conely* and *George W. Radford,* for plaintiff.

HOOKER, J.   The plaintiff claims damages for the conversion of certain personal property, to the possession and proceeds of which he asserts that he was entitled by virtue of a chattel mortgage.    The defendants were originally four in number, but the Peninsular Savings Bank was found not guilty.    The other three appealed from a verdict of guilty.    Their relation to the property is as follows: Hurley was at one time president of the American Stove Company, which concern was indebted to various creditors. Some attachments were issued against its property, which led to a settlement, wherein the plaintiff took his mortgage, as trustee for certain creditors.    A mortgage was also given to Joseph B. Moore, trustee, to cover certain obligations then or subsequently held by the Peninsular Savings Bank, of which he was cashier, consisting of paper made by the stove company and indorsed by Hurley, who had some time before severed his connection with the stove company.    The mortgage referred to no notes or obligations, and did not run to the bank, but was an undertaking to pay $3,000 within two years.    The notes do not appear to have been offered in evidence, and we have no means of determining their dates or amounts, or the times when they were to become due, or to whom they were made payable, except from the testimony of Moore, who said that at the time he took the mortgage, and at subsequent times, before any question had been raised as to the mortgage, he, as cashier of the Peninsular Savings Bank, discounted for John Hurley notes of the

American Stove Company for $1,200, $300, $450, and $1,050, respectively, making a total of $3,000; that he had no interest in the mortgage except as trustee of Mr. Hurley; and that he discounted the notes upon Mr. Hurley's credit, and not upon the credit of the mortgage.

It is admitted that plaintiff's mortgage was made subject to the mortgage given to Moore. Both were dated November 1, 1889, and fell due two years later. They covered the same property, which consisted of the buildings, machinery, tools, horses, and much other property used about the stove business, including stock and books of account, belonging to the American Stove Company. Plaintiff's witness Radford testified that plaintiff's mortgage was given in accordance with an arrangement made between himself and Hurley (through counsel), whereby Hurley agreed to furnish $3,000 to the American Stove Company, to be secured by a mortgage of $3,000, which was to be a first lien upon the property. Both mortgages contained an insecurity clause, giving the right to "take possession of the goods, and then dispose of them in the manner above specified," to which was added in the Moore mortgage the words, "or in such other manner as the party of the second part thinks best."

On March 10, 1890, plaintiff received a notice from Mr. Atkinson (who was counsel for Hurley) to the effect that the party owning the Moore mortgage was ready, upon payment of the amount due thereon, to transfer it to him as the holder of the second mortgage, and that, if not taken, the power of sale would be enforced. On the 18th of the same month plaintiff tendered $3,300, but, as he stated on his cross-examination,—

"We did not pretend to make an unconditional tender; we made a tender to J. B. Moore for his mortgage and the securities accompanying it.   *   *   *   We requested an assignment of his mortgage and the accompanying securities. I understood Mr. J. B. Moore held notes

indorsed by John Hurley, accompanying his mortgage. We wanted John Hurley's name on the notes, so that, if it could be done, we could collect the amount due from him."

Counsel assert that there was testimony tending to show that at one time the plaintiff, by his attorneys, demanded simply an assignment of the mortgage. If this is so, this testimony is not pointed out. We find something of the kind in plaintiff's direct testimony, but we consider this effectively qualified by his testimony on cross-examination above mentioned. Mr. Radford, his counsel, who was present, stated: "I wanted to get an assignment of that chattel mortgage, together with everything there was to it. We wanted the obligation of the stove company. We asked for the chattel mortgage, together with any obligations connected with it." Again, in answer to the question, "Tell the jury whether you expected to get the note with John Hurley's indorsement or not," he said: "We considered we were entitled to them, if there were such. I required the mortgage, and every obligation connected with it, *and the indorsement.* My recollection is that the word 'note' was not used." Again, the assignment, which was prepared by plaintiff's counsel for Moore to sign, covered the mortgage, "together with the obligations and notes to secure which said mortgage *is held* by said Moore, trustee."

This tender, which the evidence conclusively shows was conditioned upon the assignment not only of the mortgage, but also of the notes indorsed by Hurley, was not accepted, and Moore testifies (and it is not contradicted, so far as appears from the record) that he notified Hurley and Atkinson that he must be relieved from his trusteeship. It appears from other testimony that soon after the tender, and on the same day, Hurley's brother advanced

101 MICH.—38.

money to Walsh to buy the mortgage; that with this money, paid by Mr. Walsh, the notes of the stove company bearing Hurley's indorsement were taken up and returned to Hurley, and the mortgage was assigned to Walsh. A foreclosure sale had already been advertised, which, after one or more adjournments, was made under the direction of Walsh. Hurley was present, and, the sale being forbidden by the plaintiff, the property was bid in by Walsh, who took a bill of sale from the person who acted as auctioneer.

It was contended upon behalf of the plaintiff:

1. That this mortgage, if valid, was discharged as to plaintiff, by the tender.

2. That the sale was premature, being unauthorized by the mortgage until November 1, 1891.

3. That the sale was therefore an unlawful conversion of the property, as against plaintiff, entitling him to its value to the extent of his claim.

The evidence (all of which is contained in the bill of exceptions) shows that the notes which Hurley indorsed were not paper to which the mortgage held by Moore was collateral. No reference is made by them to the mortgage, nor are they mentioned in the mortgage. They are not shown to have been made at the same time that the mortgage was made, and Moore's testimony is that they were made at different times. They are not shown to have been given to Moore in any capacity, unless it may possibly be inferred that they were made payable to him as cashier. He says that as cashier he discounted them for the bank; hence they were the property of the bank. It is not shown that the bank had any interest in the mortgage. If the mortgage was Hurley's, and plaintiff sought subrogation to his rights against their mutual debtor, he would not be entitled to the benefit of Hurley's indorsement. And if it should be said that the mortgage was by

Hurley used as collateral at the bank (which no one testifies to), plaintiff would be entitled to no more than as though Hurley had not thus used it. Plaintiff's own testimony shows that Hurley was to be secured by a mortgage having priority over his own, as a consideration for $3,000, which he was to furnish the stove company. In short, the evidence is conclusive that this Moore mortgage was intended for the benefit of Hurley, and upon the faith of it Hurley had obligated himself to pay $3,000 to the Peninsular Bank. We think that the plaintiff had no right to this paper, and that the tender, being accompanied by and conditioned upon a demand which he was not legally entitled to make, was insufficient, and did not have the effect contended for.

Defendants' counsel requested a charge that—

"If the jury believed that the tender * * * was accompanied by a demand * * * for the assignment of the notes and obligations held by the Peninsular Savings Bank, including the indorsement of John Hurley, and was not an unconditional tender of the amount due upon the mortgage, then such tender would not have the effect of discharging the mortgage under which the sale in question was made, and the defendants would be entitled to a verdict."

The court was justified in refusing this request only by reason of the last proposition, viz., that "the defendants would be entitled to a verdict," the effect of which, had it been given, would have been to take all other questions from the consideration of the jury, and make the case depend upon the question of tender. But the court went further than to refuse the request, and said to the jury, in substance, that the Moore mortgage was the property of the Peninsular Bank, by stating that "the Peninsular Savings Bank was to have the first mortgage or priority of mortgage, and it was so stated in the instrument." This

is at variance with the evidence, for nothing shows that the mortgage was to be the property of the bank, or that it was so stated therein, or so understood by any one, as the court probably understood when he directed a verdict in its favor. This was prejudicial to the defendants, but as error is assigned only upon the refusal of the request, which, as already shown, was properly refused, it does not afford a basis for relief.

The court instructed the jury that the sale was unauthorized and premature, for the reason that by the terms of the mortgage, and under the circumstances of the case, Moore, as trustee, was the only person authorized to direct a foreclosure, and the evidence showed that he never directed any such foreclosure sale; and for the further reason that a sale could not be lawfully made before November 1, 1891, after condition broken by non-payment. The evidence shows that Moore assigned this mortgage, before the foreclosure sale, to Walsh, who directed the sale. The mortgage was a chose in action, and the proper subject of assignment, and the assignee succeeded to all of the rights of seizure and sale that the mortgagee possessed. *Dalrymple v. Sheehan*, 20 Mich. 232. If, then, it be said that the seizure was proper, it remains to inquire whether the sale was premature. Authorities exist from which the inference may perhaps be drawn that property seized under an insecurity or safety clause should be sold without delay. Instances can be imagined where it would be necessary to prevent destruction or loss of the property. See Jones, Chat. Mortg. § 433. We need not determine that question, however, as by the terms of the mortgage the mortgagee is authorized to take possession, and *then* dispose of the same by sale, etc. To our mind this clearly gives the right to sell at once, and there is reason for the claim that the sale could not, under this

provision, be safely delayed. *Frisbee v. Langworthy*, 11 Wis. 375. We think, therefore, that the court was in error in his instructions upon this subject.

The judgment must be reversed, and a new trial ordered.

McGRATH, C. J., LONG and GRANT, JJ., concurred. MONTGOMERY, J., did not sit.